|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO | |
| NEW YORK WIPING & INDUSTRIAL<br>PRODUCT COMPANY, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ROCKY BRANDS, INC., et al.,<br><br>    Defendants. | Civil No. 09-1237 (JAF) |

**OPINION AND ORDER**

Plaintiff, New York Wiping & Industrial Product Company, Inc., brings this action in diversity against Defendants, Rocky Brands, Inc., Rocky Brands Wholesale, LLC, and Rocky Brands Retail, LLC, alleging impairment of, and interference with, contract under Puerto Rico law, 10 L.P.R.A §§ 278-278d (2004), and abuse of process, presumably under the broad banner of 31 L.P.R.A § 5141 (1990). (Docket No. 3 at 9-13.) Defendants move to dismiss or transfer Plaintiff's action pursuant to 28 U.S.C. § 1404. (Docket No. 11.) In addition, Defendants move to dismiss Plaintiff's abuse of process claim under Federal Rule of Civil Procedure 12(b)(6). (Id.) Plaintiffs oppose (Docket No. 16), and Defendants reply (Docket No. 19).

**I.**

**Factual and Procedural Synopsis**

We derive the following factual summary from Plaintiff's amended complaint. (Docket No. 3.) In ruling on a motion to dismiss, we assume all of Plaintiff's allegations to be true and make all reasonable inferences in its favor. See Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

Plaintiff, incorporated in Puerto Rico, is a distributor of industrial safety products and operates a chain of retail outlets under the "Safety Zone" brand. Defendant Rocky Brands, Inc. is an Ohio corporation that designs, manufactures, and markets footwear and accessories. Defendant Rocky Brands Wholesale, LLC is a Delaware company that acts as Rocky Brands, Inc.'s wholesale distribution arm. Rocky Brands Retail, LLC, also incorporated under Delaware law, operates retail stores throughout the nation under the "Lehigh Outfitters" brand, including stores and "shoe mobiles" in Puerto Rico. Nelsonville, Ohio, is the principal place of business for all three defendants.

In 1990, Morris Rothenberg & Sons, Inc. contracted with Georgia Boot, Inc. for exclusive distributorship of Georgia Boot products in Puerto Rico and throughout the Caribbean. (Docket No. 3-1.) In 1996, Plaintiff acquired Morris Rothenberg & Sons and assumed Morris Rothenberg & Sons' rights under the 1990 contract with Georgia Boot. In 2001, Georgia Boot acquired exclusive rights to distribute Dickies

brand footwear in Puerto Rico. Georgia Boot, in turn, granted this right to Plaintiff by a communication dated July 31, 2001. (Docket No. 3-2.)  In January 2005, Georgia Boot's parent company merged with Rocky Brands, Inc. Further mergers in that same month resulted in the creation of Rocky Brands Retail, LLC and Rocky Brands Wholesale, LLC.

In 2007, Plaintiff discovered that Defendants were selling both Georgia Boot and Dickies brand products in its retail stores and "shoe mobiles" throughout Puerto Rico. Plaintiff brought this contractual violation to Defendants' attention as early as October 2007.  Plaintiff's president attempted communication with Defendants through May 2008 concerning the breach, but received no satisfactory response.

On May 16, 2008, Rocky Brands' senior vice president for sales, Gary Markham, e-mailed Morris Rothenberg, Plaintiff's president.  The e-mail informed Rothenberg that Defendants would cease carrying Georgia Brands in its Puerto Rico stores but that Defendants could no longer honor an exclusive distribution agreement for Dickies brand. Despite its assurance to respect Plaintiff's exclusive right to distribute Georgia Boots in Puerto Rico, Defendants continued to sell both Georgia Boot and Dickies brands in its Puerto Rico outlets. At some point in 2008, Plaintiff entered into an agreement with another manufacturer to produce boots for Plaintiff's own "Safety Zone" brand to "mitigate the damages caused by Defendants." (Docket No. 3 at 8.)

On March 10, 2009, Plaintiff commenced this action in diversity in federal district court. (Docket No. 1.) The following day, Defendants provided Plaintiff with thirty days' notice of termination of their 1990 contract. (Docket No. 3-6.) Defendants filed an action for trade dress infringement and unfair trade practices in an Ohio state court on March 16, 2009. (Docket No. 11-2.) That case was later removed to the Southern District of Ohio.

Plaintiff filed an amended complaint on March 18, 2009. (Docket No. 3.) Defendants moved for dismissal or transfer on May 14, 2009. (Docket No. 11.) Plaintiff opposed Defendants' motion on June 1, 2009. (Docket No. 16.) Defendants replied on June 15, 2009. (Docket No. 19.)

## II.

## Analysis

Defendants argue that this case should be either transferred to the Southern District of Ohio on the basis of a "special circumstances exception to the first-filed rule" or dismissed entirely. (Docket No. 11 at 1, 5.) Furthermore, Defendants move to dismiss Plaintiff's abuse of process claim. (Docket No. 11 at 10.)

**A. Motion to Transfer Venue**

As Defendants present no argument to support dismissal for forum non conveniens, we decline to consider this motion. Defendants also move to transfer. (Docket No. 11 at 5-7). Motions to transfer civil actions to another district court are generally governed by 28 U.S.C.

Civil No. 09-1237 (JAF)                                                -5-

§ 1404(a).[1] Under § 1404(a), a case may be transferred for the convenience of the parties and witnesses in the interest of justice. The court may also consider the "availability of documents; possibility of consolidation; and the order in which the district court obtained jurisdiction." Coady v. Ashcraft & Gerel, 223 F.3d 1, 10 (1st Cir. 2000) (internal citations omitted).

Where the parties have filed two actions in separate districts, however, and the actions are nearly identical, "the first-filed action is generally preferred in a choice of venue decision." Id. The Second Circuit has found a narrow exception to this rule that has since been adopted by the First Circuit. Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 424 n.4 (2d Cir. 1965) (recognizing exceptions where choice of venue of first suit was motivated entirely by forum shopping, or where first suit was against a customer of a copyright infringer and second suit was against actual infringer; accord Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735 (1st Cir. 1977) (finding an exception to the first-filed rule in a patent case where "the earlier action is . . . against a mere customer and the later suit is a declaratory judgment action brought by the manufacturer of the accused devices").

---

[1] We note that Defendants' motion to transfer failed to explicitly state a legal basis for the motion. (Docket No. 11). In the future, Defendants would do well to differentiate between §§ 1404, 1406, and forum non conveniens as bases for transfer or dismissal.

Since Codex, the exception has grown to include actions in which one party, whether through deceit or some other act of bad faith, wins a "race to the courthouse." See, e.g., Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16 (D. Mass. 2000) (recognizing a pattern in case law where a first-filing party "[misled] his opponent into staying his hand in anticipation of negotiation"). Defendants cite this court's decision in Gemco LatinoAmerica, Inc. v. Seiko Time Corp., 623 F. Supp. 912 (D.P.R. 1985), for the proposition that a first-filed action should be stayed or transferred where special circumstances exist. (Docket No. 11 at 6).

Yet, "where the overlap between two suits is less than complete, the judgment is made case by case, . . . based on such factors as the extent of the overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996).

A strong presumption exists in favor of the plaintiff's choice of forum when a court rules on a motion to transfer. Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Therefore, the defendant must prove either the convenience of the second forum or the existence of the factors in TPM Holdings. 91 F.3d 1, 4 (1st Cir. 1996).

Foregoing any argument as to convenience, Defendants instead hitch their wagon entirely to the "special circumstances exception"

Civil No. 09-1237 (JAF)                                                -7-

to the first-filed motion rule. (Docket No. 11 at 5-7.) While the exception Defendants cite appears to exist in the First Circuit, they have neglected to prove an essential element: Namely, that the first-filed and second-filed claims are identical. See, e.g., Veryfine, 124 F. Supp. 2d 16 (separate suits filed over same breach of contract claim); Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d. 12 (D. Mass. 2002) (first-filed claim for declaratory judgment; second-filed claim for damages based on same issue).

The case before us, however, is easily distinguishable from the pending case in the Southern District of Ohio. The other pending case makes claims of trade dress infringement, deceptive trade practices, and unjust enrichment at Ohio law. (Docket No. 11-2.) Furthermore, these claims are all independent of the 1990 distributorship contract at issue. (Id.) The instant case, by contrast, arises solely from a breach of the 1990 exclusive distributorship contract and is premised upon the Dealers' Contracts Act under Puerto Rico law, with no mention of trade dress infringement. (Docket No. 3.) Therefore, these distinct claims do not reach the level of similarity that would trigger the first-filed rule, much less an exception to said rule. Veryfine, 124 F. Supp. 2d at 21-23.

As Plaintiff fails to demonstrate the similarity of the cases, our decision is guided by the First Circuit's analysis set forth in TPM Holdings. See 91 F.3d at 4. As demonstrated above, there is minimal overlap between the claims. Given that the claims are

Civil No. 09-1237 (JAF)                                                    -8-

unrelated, there is a low likelihood of conflict between this court and our sister court in Ohio. Also, Plaintiff's claims are based on a distinct Puerto Rico statute. Finally, we note that Defendants' ownership and operation of retail businesses within Puerto Rico precludes the possibility of inconvenience in litigating here. Defendants have, therefore, not met their burden. See TPM Holdings, 91 F.3d at 4.

**B.    Sua-Sponte Dismissal under Rule 12(b)(1)**

Defendants move to dismiss the "abuse of process" claim in Plaintiff's amended complaint. (Docket No. 3 at 12.) Instead, we dismiss the claim sua sponte as unripe and, therefore, need not reach the merits of Defendants' defenses under Rule 12(b)(6).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a federal district court has an independent obligation to review its subject-matter jurisdiction over all cases "even in the absence of a challenge from any party." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); see Fed. R. Civ. P. 12(h)(3). We take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363; see Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co., 215 F.3d 195, 197 (1st Cir. 2000).

We may order dismissal sua sponte if it is evident that we lack power to decide a case. See Arbaugh, 546 U.S. at 514. While prior

Civil No. 09-1237 (JAF)                                              -9-

notice to the plaintiff is ordinarily required to permit the plaintiff to correct her error, no notice is necessary "[i]f it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile." González-González v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including ripeness, mootness, sovereign immunity, and the existence of a federal question or diversity, and sovereign immunity. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). The doctrine of ripeness is drawn from both limitations on judicial power under Article III of the Constitution and prudential concerns.

The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbot Labs. v. Gardner, 387 U.S. 136, 148 (1967); accord City of Fall River, Mass. v. F.E.R.C., 507 F.3d 1, 6 (1st Cir. 2007). The court determines ripeness through a two-pronged test: Fitness of the issues for judicial decision; and degree of hardship that the parties would experience if the court withholds consideration of the issues. Abbot, 387 U.S. at 149. A case must satisfy both prongs to be ripe for review, although a "very powerful exhibition of immediate hardship might compensate for questionable fitness . . . or vice versa." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995).

Civil No. 09-1237 (JAF)                                                -10-

Under the "fitness" prong, the court considers "whether the matter involves uncertain events which may not happen at all, and whether the issues involved are based on legal questions or factual ones." Fall River, 507 F.3d at 6 (internal citation omitted). A "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prod. Co., 473 U.S. 568, 580-81 (1985)). The "hardship" prong "typically turns upon whether the challenged action creates a 'direct and immediate dilemma' for the parties." W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992) (quoting Abbot, 387 U.S. at 152-153). This inquiry also considers whether a plaintiff suffers "any present injury from a future contemplated event." McInnes-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003).

As an initial matter, the Puerto Rico Civil Code does not specifically provide a claim for "abuse of process." Such a claim may exist, however, under article 1802 of the Civil Code, which provides for general tort liability. See 31 L.P.R.A § 5141 (1990). In Boschette v. Bach, this court produced a detailed history of the abuse of process claim in Puerto Rico. 916 F. Supp. 91, 97-100 (D.P.R. 1996). The court concluded, "From the cases it would appear that while the Civil Code is moving in the direction of recognizing

a general cause of action analogous to the common law's abuse of process, the law is still somewhat unsettled." Id. at 99.

In 2005, the First Circuit recognized an abuse of process claim under Puerto Rico law, stating "[t]he two basic elements of abuse of process are a bad motive, and the use of a legal process for an improper, collateral objective."[2] González Rucci v. INS, 405 F.3d 45, 49 (1st Cir. 2005) (citing Microsoft Corp. v. Computer Warehouse, 83 F. Supp. 2d 256, 261 (D.P.R. 2000)).

In its amended complaint, Plaintiff sets forth two bases for its abuse of process claim. It first asserts a claim where Defendants "may conceivably allege that the acts performed by them to the detriment of [Plaintiff] are performed under the protection of applicable law." (Docket No. 3 at 12) (emphasis added). Second, Plaintiff asserts that Defendants "may conceivably allege that any acts performed by [Plaintiff] were in violation of any law." Id. (emphasis added).

In essence, Plaintiff is making a prophylactic claim of damages for an abuse of process that has not happened and might never happen. The claim is so conjectural that it would be impossible for us to

---

[2] We note that the Microsoft opinion, which the First Circuit cited in announcing an abuse of process claim under Puerto Rico law, was itself uncertain as to whether the claim actually existed. 83 F. Supp. 2d at 261. "It is not altogether clear whether article 1802 of the Civil Code of Puerto Rico supports a general cause of action for abuse of process in its common-law sense . . . . Notwithstanding, assuming that article 1802 does support a cause of action for abuse of process, some judges in this district have applied the general requisite elements for such a claim under common law in testing the sufficiency of a claimant's allegations." Id.

Civil No. 09-1237 (JAF)                                              -12-

evaluate the "bad motive" and "collateral objective" elements of an abuse of process claim.[3] Plaintiff, therefore, fails the "fitness" prong of ripeness review. See Fall River, 507 F.3d at 6. We also find no hardship to the parties in declining judgment on the merits. Plaintiff has alleged no present injury from an anticipated abuse of process and we cannot conceive of any harm to Plaintiff being suffered. McInnes-Misenor, 319 F.3d 63, 70. Plaintiff's claim for abuse of process is, therefore, unripe for judgment.

## IV.

## Conclusion

For the reasons stated herein, we hereby **DENY** Defendants' motion to dismiss and/or to transfer venue. (Docket No. 11.) We **DENY** transfer of this case to the Southern District of Ohio. We **DECLINE** to consider Defendants' motion to dismiss for forum non conveniens and under Rule 12(b)(6). On our own motion, we **DISMISS** for lack of jurisdiction Plaintiff's abuse of process claim (Docket No. 3) **WITH PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 31st day of August, 2009.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge

---

[3] In fact, Plaintiff has failed to make any factual allegation from which a common law abuse of process claim could plausibly arise and, therefore, its claim would not likely have survived Defendants' motion under Rule 12(b)(6).